1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10
11

MELODY J. C.,[1]

| | |
|---|---|
| Plaintiff, | Case No. 2:24-cv-10070-PD |

12

Plaintiff,

13

v.

**MEMORANDUM OPINION AND ORDER AFFIRMING AGENCY DECISION**

14

FRANK BISIGNANO,[2]

15

COMMISSIONER OF SOCIAL SECURITY,

16

Defendant.

17
18

Plaintiff challenges the denial of her application for Social Security

19

Supplemental Security Income ("SSI"). For the reasons stated below, the

20

decision of the Administrative Law Judge is affirmed.

21
22

## I.    Pertinent Procedural History and Disputed Issues

23

On October 25, 2021, Plaintiff filed an application for SSI.

24
25

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the United States Judicial Conference Committee on Court Administration and Case Management.

26
27

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025, and is substituted as Defendant in this suit. *See* 42 U.S.C. § 405(g).

28

[Administrative Record ("AR") 395.³]  Plaintiff alleges that she became disabled and unable to work on February 8, 2015.  [*Id.*]  Plaintiff's application was denied on January 5, 2022 and upon reconsideration on March 3, 2022.  [AR 300, 311.]  Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on November 7, 2023.  [AR 226.]  Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert ("VE").  [AR 226-27.]  On February 27, 2024, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act ("SSA").  [AR 219.]  The Appeals Council denied Plaintiff's request for review on October 4, 2024, rendering the ALJ's decision the final decision of the Commissioner.  [AR 1.]

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.  *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416), *as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since October 25, 2021, the SSI application date (20 CFR 416.920(b) and 416.971 *et seq.*)."  [AR 206.]

At step two, the ALJ found that Plaintiff had the following severe impairments: "polysubstance induced bipolar disorder; psychotic disorder; methamphetamine use disorder; human immunodeficiency virus (HIV) infection; and obesity (20 CFR 416.920(c))."  [*Id.*]  The ALJ noted that Plaintiff alleged being limited in her ability to work solely due to "bipolar disorder," but that the medical evidence showed she had a history of psychotic

---

³ The Administrative Record is at Docket Numbers 12-1 through 12-32.

symptoms and that those symptoms "were psychiatrically treated and relatively well controlled until she began using methamphetamine in early 2021." [AR 206-07.] The ALJ discussed the evidence of Plaintiff's continual and ongoing methamphetamine abuse, and found Plaintiff "plainly has polysubstance induced bipolar disorder, a diagnosis consistently reflected in the records of examining and treating doctors alike." [AR 207.] The ALJ also noted that Plaintiff did not allege an inability to work due to physical issues, but still considered her HIV infection, obesity, and sleep apnea. [*Id.*] The ALJ found that Plaintiff's sleep apnea was non-severe. [*Id.*]

## A.    The Initial Drug and Alcohol Abuse Analysis

Pursuant to 20 C.F.R. § 416.935, the ALJ proceeded with an initial drug and alcohol abuse analysis ("DAA") that considered all of Plaintiff's severe impairments, including her substance use disorders. [AR 206.] *See also* SSR-13-2p ("Evaluating Cases Involving Drug Addiction and Alcoholism").

At step three, the ALJ found that "[e]ven with her substance use, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." [AR 207.]

Before proceeding to step four, the ALJ determined that "based on all of the impairments, including the substance use disorder(s)," Plaintiff has the Residual Functional Capacity ("RFC") to perform "medium work" with the following reductions:

> [S]he can understand and perform simple instructions and tasks; can maintain concentration, persistence and pace for simple instructions and tasks, for up to 1 hour at a time, rendering her off task over 30% of an 8-hour workday; can occasionally interact with coworkers and supervisors; cannot work with the general public; and can adapt to occasional changes in the workplace.

[AR 209 (emphases omitted).[4]]

At step four, the ALJ found that Plaintiff has no past relevant work as she "has never worked either in employment or in self-employment." [AR 211.]

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that "based on all the impairments, including the substance use disorder, there are no jobs existing in significant numbers in the national economy that claimant could perform (20 CFR 16.960(c) and 416.966)." [*Id.*] Accordingly, the ALJ concluded "[a] finding of 'disabled' is therefore appropriate . . . ." [AR 212.]

## B.    The Subsequent DAA Analysis

Upon finding Plaintiff was disabled with a material substance use disorder, the ALJ began the subsequent DAA analysis.  SSR-13-2p.

At step two, the ALJ found that if Plaintiff stopped the substance use, "the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities" and thus she "would have a severe impairment or combination of impairments (20 CFR 416.922)." [AR 212.]

At step three, the ALJ found that if Plaintiff stopped the substance use, "she would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR

---

[4] The regulations define "medium work" as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. 416.1567(c) (2025).

Part 404, Subpart P, Appendix 1 (20 CFR 416.994(b)(5)(i))." [*Id.*]

Before proceeding to step four, the ALJ found that "in the absence of substance use" Plaintiff has the RFC to perform "medium work" with the following reductions:

> [S]he can understand and perform simple instructions and tasks; can maintain concentration, persistence and pace for simple instructions and tasks, for 2 hours at a time, over an 8-hour workday; can occasionally interact with coworkers and supervisors; cannot work with the general public; and can adapt to occasional changes in the workplace.

[AR 209 (emphases omitted).]

At step four, the ALJ found that Plaintiff "has no past relevant work (20 CFR 416.965)." [AR 218.]

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that if Plaintiff stopped the substance use, there are jobs that exist in significant numbers in the national economy that she could perform, in the occupations of "kitchen helper," "machine packager," and "hand packager." [*Id.*]

The ALJ found that "[t]he substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if [s]he stopped the substance use (20 CFR 416.920(g) and 416.935)." [AR 219.]  Based on that finding, the ALJ concluded that Plaintiff has not been under a disability as defined in the SSA from the alleged onset date through the date of the ALJ's decision.  [*Id.*]

### C.    Issues Raised

Plaintiff raises two issues:  (1) whether the ALJ erred when assessing Plaintiff's RFC, and (2) whether the ALJ erred when rejecting Plaintiff's

subjective symptom testimony.  [Dkt. No. 16 at 8, 17.]

## II.   Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits.  A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citation and internal quotation marks omitted).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  *Id.* (citation and internal quotation marks omitted); *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (same).

It is the ALJ's responsibility to determine credibility and to resolve conflicts in the medical evidence and ambiguities in the record.  *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).  "Where evidence is susceptible to more than one rational interpretation," the ALJ's reasonable evaluation of the proof should be upheld.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[5]

Error in Social Security determinations is subject to harmless error analysis.  *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).  Error is harmless if it is "inconsequential to the ultimate nondisability determination" or, despite the legal error, "if the agency's path may reasonably be discerned."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted).

---

[5] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law.  *Grimm v. City of Portland*, 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used . . . as the pivotal basis for a legal ruling by a district court").

**III.    Discussion**

   **A.    The ALJ Committed Harmless Error When Assessing Plaintiff's RFC**

   **1.    Relevant Law**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite their limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. The ALJ is responsible for translating and incorporating supported medical evidence into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford*, 950 F.3d at 1149. Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan*, 528 F.3d at 1198.

The Social Security Administration regulations for claims filed on or after March 27, 2017 apply here. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 2017 WL 168819, at 5844-45 (Jan. 18, 2017). Under these regulations, special deference is no longer given to the opinions of treating and examining physicians on account of their relationship with a claimant, and an ALJ's "decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022); 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those

from [a claimant's] medical sources.").

The regulations require ALJs to consider and evaluate the persuasiveness of all medical opinions and prior administrative medical findings from medical sources. *See* 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In determining how "persuasive" these opinions and findings are, an ALJ must consider the following factors: supportability, consistency, relationship with claimant, specialization, and other factors that support or contradict the medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "Supportability" and "consistency" are the most important factors to be considered when evaluating the persuasiveness of medical opinions and, therefore, the ALJ is required to explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)); 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); 20 C.F.R. § 416.920c(c)(2). While the ALJ's decision must articulate how the ALJ considered supportability and consistency, the decision need not explain the remaining factors unless the ALJ is deciding among differing yet equally persuasive opinions or findings on the same issue. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *Woods*, 32 F.4th at 792.

An ALJ must provide an explanation supported by substantial evidence that articulates how the ALJ considered both supportability and consistency. *Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023); *see also Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021) (ALJ must address how they considered the consistency and supportability factors in sufficient detail

1    to allow a reviewing court to conduct a meaningful review of whether that

2    reasoning is supported by substantial evidence).

3           An RFC is defective if it fails to take a plaintiff's limitations into

4    account.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.

5    2009).  However, "[t]here is no requirement that the RFC recite medical

6    opinions verbatim, rather the ALJ is responsible for translating and

7    incorporating medical findings into a succinct RFC."  *McIntosh v. Colvin*, 2018

8    WL 1101102, at *5 (S.D. Cal. Feb. 26, 2018); *see also Foster v. Kijakazi*, 2022

9    WL 3230472, at *2 (9th Cir. Aug. 10, 2022) ("An ALJ considers opinions from

10   medical sources on the issue of a claimant's RFC, but the final responsibility

11   for deciding this issue is reserved to the Commissioner.") (citations, internal

12   quotation marks, and alterations omitted).  Finally, it is well established that

13   RFC determinations are legal decisions, not medical opinions.  *Valerie C. v.*

14   *Berryhill*, 2019 WL 450675, at *6 (C.D. Cal. Feb. 5, 2019).

15                  **2.     The ALJ's Findings**

16          The ALJ found that Plaintiff had "human immunodeficiency virus (HIV)

17   infection" and "obesity" as severe impairments, among others.  [AR 206.]

18   During the step two discussion, the ALJ noted, "the claimant has not alleged

19   an inability to work due to any physical issues" but then cited and discussed

20   medical evidence regarding Plaintiff's HIV infection and obesity.  [AR 207

21   (citing AR 4063, 4302).]  The ALJ wrote that "although not alleged as a

22   limiting factor, the claimant's obesity is being considered in conjunction with

23   her other 'severe' impairments throughout this decision."  [*Id.*]

24          In the initial DAA analysis, the ALJ found that Plaintiff "has the

25   residual functional capacity to perform medium work," with the only other

26   noted reductions being nonexertional (i.e., mental) limitations.  [AR 209.]  In

27   support of the "medium work" finding, the ALJ cited the hearing record to

28

note that Plaintiff "does not have any notable physical problems except that she is overweight, which can make it harder for her to be on her feet for long periods." [AR 210.] The ALJ also noted Plaintiff's testimony that she "gained weight when she began using crystal meth", "is still using meth", "has never tried rehab", and "is not ready to quit using meth yet[.]" [*Id.*]

In the subsequent DAA analysis, the ALJ made the same "medium work" finding as to Plaintiff's exertional (i.e., physical) limitations. [AR 213.] The ALJ discussed giving Plaintiff "the benefit of the doubt in concluding that she is *physically* restricted to 'medium work' (as found above)." [*Id.* (emphasis in original).] This was despite "the most recent treatment records show[ing] the claimant 'denies any physical challenges at this time'", no doctors limiting her "in terms of her ability to meet the *physical* demands of work", a medical opinion and prior administrative medical finding both assessing her as having no physical limitations, and Plaintiff not alleging any physical conditions in connection with her application and not mentioning any physical issues at the hearing "until specifically asked about any such issues (at which point she mentioned only her weight)." [*Id.* (emphasis in original).] The ALJ discussed the supportability and consistency of the medical opinion (by Dr. Randall Caldron) and prior administrative medical finding (by Dr. Francis Greene), and found both "generally persuasive." [*Id.*] Yet based on Plaintiff's hearing testimony regarding her physical condition, the ALJ chose to depart from the medical opinion and prior administrative medical finding to find that Plaintiff "is maximally capable of 'medium' work." [*Id.*]

### 3.    The Parties' Arguments

Plaintiff argues that the ALJ committed reversible error when assessing Plaintiff's RFC. [Dkt. No. 16 at 8.] Plaintiff specifically contends the ALJ erred because "an ALJ must have a medical opinion to support his or her

residual functional capacity", the ALJ in this case "limited [Plaintiff] to
medium exertion work" even though "no physician in this matter opined that
[Plaintiff] has the physical limitations as found by the ALJ in assessing the
residual functional capacity", "[t]he medical evidence itself does not support
the ALJ's limitation", and for multiple evidentiary reasons "the Court cannot
determine how the ALJ arrived at the conclusion that [Plaintiff] was capable
of medium work." [*Id.* at 8-16.] Plaintiff also argues it is "inherently
harmful" when an ALJ does not cite provide citations to the record. [*Id.* at 11,
14.]

     The Commissioner argues that "[s]ubstantial evidence supports the
ALJ's finding that Plaintiff retained the RFC for medium work." [Dkt. No. 18
at 4.] The Commissioner points to different parts of the ALJ's decision that
considered Plaintiff's statements (located in her function report, physical
examinations, and hearing testimony), objective medical findings (located in
medical documents and a medical opinion), and medical source function
assessments (produced by an examining doctor and State agency medical
consultants). [*Id.* at 4-7.] The Commissioner also argues that "there is no
requirement for the ALJ's RFC findings to exactly match a medical opinion"
and that "ALJs are, at some level capable of independently reviewing and
forming conclusions about medical evidence to discharge their statutory duty
to determine whether a claimant is disabled and cannot work." [*Id.* at 8
(quoting *Farlow*, 53 F.4th at 488 (internal quotation marks omitted)).] This is
because the RFC is "a legal, not medical determination." [*Id.* (emphasis
omitted).]

     Plaintiff replies that the Commissioner's response "essentially concedes
the issues because the Commissioner is arguing that the ALJ should have not
done what he did under the regulations." [Dkt. No. 19 at 2.] Plaintiff accuses

the Commissioner of choosing to "ignore what the ALJ actually found in the decision." [*Id.* at 4.]  Plaintiff concludes by arguing the ALJ erred by determining Plaintiff's physical limitations based on testimony and not medical opinion evidence and by not explaining why some of Plaintiff's subjective symptom testimony was rejected while other portions were used to support the RFC finding and that *Farlow*, 53 F.4th at 488, is inapposite.  [*Id.* at 5-7.]

### 4.    The ALJ's "Obesity" Impairment Finding is Based on Substantial Evidence, but the RFC Limitation of "Medium Work" is Not

Claimants have the responsibility "to prove to [the ALJ] that [they] are blind or disabled."  20 C.F.R. § 416.912(a)(1).  ALJs "will consider only impairment(s) [claimants] say [they] have *or about which [the ALJs] receive evidence*."  *Id.* (emphasis added).  Before deciding that the claimant is not disabled, an ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence."  *Id.*  If all of the evidence received by the Agency is consistent and there is sufficient evidence for the ALJ to determine whether a claimant is disabled, the ALJ "will make [the] determination based on that evidence."  20 C.F.R. § 416.920b(a).  If there is insufficient evidence to determine whether a claimant is disabled, the ALJ "will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section."  *Id.* § 416.920b(b)(2).  "[T]he ALJ has a special duty to develop the

record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ is required to articulate how they considered the supportability and consistency of medical opinions and prior administrative medical findings, but they are not required to articulate those considerations as to nonmedical sources. 20 C.F.R. § 416.920c(b)(2), (d).

In short, the relevant Social Security regulations require ALJs to inquire about and consider evidence of impairments about which they receive evidence; they do not require an ALJ to specifically have a matching or supporting medical opinion (or prior administrative medical finding) in order to craft an RFC. Rather, an ALJ must consider all of the evidence, determine credibility, resolve ambiguities in the evidence, develop the record further where necessary, and craft the RFC based on substantial evidence and in a way that is not based on legal error. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

At step two, the ALJ cited objective medical evidence as to Plaintiff's weight and physical functioning; the ALJ accordingly found that Plaintiff had a severe impairment of obesity. [AR 206-07 (citing AR 4063).] This complied with the manner in which ALJ was required to determine whether Plaintiff had a medically determinable impairment. 20 C.F.R. § 416.921 ("Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."). This is substantial evidence for the step two finding, and it is consistent with substantial evidence of Plaintiff's obesity that exists throughout the medical record. [*See, e.g.,* AR 1177-79 (medical notes noting Plaintiff's obesity as related to multiple reasons for the medical appointment); 1187, 1229-30 ("BMI 95-99 percentile"); 1626,

1766-68, 1851, 1913, 2085, 2225, 2323, 3840 (medical notes listing Plaintiff's
diagnosis of "severe obesity"); 1242, 1266-67 (medical notes discussing
Plaintiff's obesity and her plans to prevent obesity-related illness); 3746
(medical note listing Plaintiff's last ten weight readings, which decreased 55
pounds from December 11, 2020 to October 1, 2021).]

Before step four, the ALJ considered all the record evidence, including:
the objective medical evidence, Dr. Caldron's medical opinion, Dr. Greene's
prior administrative medical finding, Plaintiff's statements in pre-hearing
reports, and the hearing testimony.  [AR 210, 213.]  The ALJ discussed the
evidence supporting Dr. Caldron's opinion and Dr. Green's  finding, as well as
their consistency with each other and the rest of the medical evidence.  [AR
213.]  Dr. Caldron assessed Plaintiff "as having 'no limitation' in the ability to
perform basic physical work activities" and Dr. Greene assessed Plaintiff "as
having no 'severe' physical impairment(s)."  [*Id.* (citing AR 259, 4066).]  The
ALJ concluded these findings were "generally persuasive" but then departed
from them and found that Plaintiff "is maximally capable of 'medium' work."
[AR 213.]  The ALJ only cited "claimant's testimony regarding her physical
condition" as the reason for the departure.  As discussed earlier by the ALJ,
the only relevant portion of Plaintiff's testimony was that her weight "can
make it harder for her to be on her feet for long periods."  [AR 210.]

The ALJ's finding that Plaintiff was maximally capable of "medium
work" lacks substantial evidence.  There is no evidence — even from
Plaintiff's hearing testimony — that directly supports a finding that Plaintiff
can only lift 50 pounds or only frequently lift 25 pounds.  20 C.F.R.
§ 416.1567(c).  Furthermore, all the other evidence in the record — including
other portions of Plaintiff's hearing testimony — indicate otherwise.  [*See, e.g.,*
AR 243 (Plaintiff testifying that she is physically okay aside from not being

14

1   able to stand all the time, and that she does not have knee, shoulder, or neck

2   problems).]  The lack of any direct evidence (and particularly medical

3   evidence) in support of the "medium work" limitation distinguishes this case

4   from *Farlow*, which considered a situation where "the ALJ cited specific

5   contradictive medical evidence in the record." *Farlow*, 53 F.4th at 489.  Given

6   the lack of substantial evidence for the "medium work" finding, the ALJ erred

7   when including it as part of Plaintiff's RFC.

### 5.    The ALJ's Error was Harmless

10   Courts in the Ninth Circuit "apply harmless error analysis to social

11   security cases. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).  "The

12   nature of that application is fact-intensive", and it is not distinguished "based

13   on the nature or source of evidence ignored in an ALJ's opinion." *Id.*  "An

14   error is harmless if it is 'inconsequential to the ultimate nondisability

15   determination' or ' if the agency's path may reasonably be discerned,' even if

16   the agency 'explains its decision with less than ideal clarity.'" *Treichler*, 775

17   F.3d at 1099 (internal citations omitted).  "A clear statement of the agency's

18   reasoning is necessary because we can affirm the agency's decision to deny

19   benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d

20   at 492.  "However, our precedents have been cautious about when harmless

21   error should be found, even though the analytical framework itself applies

22   broadly." *Marsh*, 792 F.3d at 1173.

23   Here, there are two independent reasons why the ALJ's error as to the

24   "medium work" limitation was harmless.

15

1
2

### a)    The Exertional Limit Error Would Not Have Affected Any Subsequent Steps

Eliminating the exertional limitation from Plaintiff's RFC would not change any other part of the five-step process because the ALJ erred by effectively finding that Plaintiff was *more* limited than what was warranted by substantial evidence.

Consider what the ALJ found at steps four and five, which occurred subsequent to the ALJ's error.

At step four in both the initial and subsequent DAA analyses, the ALJ found Plaintiff did not have any past relevant work.  [AR 211, 218.]  The step four finding is unaffected by the RFC error because the non-existence of her past relevant work would not have changed based on the ALJ's RFC determination.

At step five in the initial DAA analysis, the ALJ found that, including Plaintiff's substance use disorder, she "is unable to make a successful vocational adjustment to work that existed in significant numbers in the national economy."  [AR 212.]  The initial step five finding is unaffected by the RFC error because the ALJ had already found Plaintiff disabled when considering her substance use disorder.

Finally, at step five in the subsequent DAA analysis, the ALJ found that she could work in the occupations of "kitchen helper," "machine packager," and "hand packager."  [AR 218.]  That finding is also unaffected by the RFC error because the ALJ finding that Plaintiff had no exertional limitations (i.e., that she was *less* physically disabled) would not have changed the VE's testimony that Plaintiff was physically and mentally capable of doing these three jobs, given the non-exertional limitations in her RFC.

27
28

16

### b)     The Exertional Limit Error Would Not Have Affected the Substance Use Disorder Finding and Related Evidence

Even if the ALJ had found in the subsequent DAA analysis that Plaintiff could not adjust to work in occupations that exist in significant numbers in the national economy, the ALJ still could not have determined that Plaintiff was disabled within the meaning of the SSA because of the record evidence as to Plaintiff's substance use disorder.

Under longstanding Social Security regulations, a claimant "must avail [themself] of appropriate treatment for [their] drug addiction or alcoholism at an institution of facility approved by [the agency] when this treatment is available and make progress in [their] treatment" if the ALJ determines "that [the claimant is] disabled and drug addiction or alcoholism is a contributing factor material to the determination of disability[.]" 20 C.F.R. § 416.936(a) ("Treatment required for individuals whose drug addiction or alcoholism is a contributing factor material to the determination of disability.").

Here, the ALJ found that Plaintiff's "substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if [s]he stopped the substance use (20 CFR 416.920(g) and 416.935)." [AR 219.]  The ALJ also found that Plaintiff "is still using meth", "has never tried rehab", and "is not ready to quit using meth yet[.]" [AR 210; *see also* AR 216 ("Despite the foregoing, the claimant has repeatedly declined to accept the help offered by her treatment providers (as discussed above).").]

Given the record evidence that Plaintiff had a substance use disorder that was a material contributing factor, she never sought treatment for her substance use disorder, and she did not make progress toward treatment of it, the ALJ would have erred had the ALJ determined at step five of the

1   subsequent DAA analysis that Plaintiff was disabled.  Instead, the ALJ

2   properly concluded as follows: "Because the substance use disorder is a

3   contributing factor material to the determination of disability, the claimant

4   has not been disabled within the meaning of the Social Security Act at any

5   time from the alleged onset date through the date of this decision."  [AR 219.]

6   Because there is no evidence that the ALJ's determination of "medium work"

7   would have changed the record evidence as to Plaintiff seeking treatment for

8   her substance use disorder, this is an independent reason for concluding the

9   ALJ's error was harmless.[6]

10

11   **B.    The ALJ Did Not Err in Accepting Plaintiff's Subjective Symptom Testimony**

12   **1.    Relevant Law**

13       "To determine whether a claimant's subjective symptom testimony is

14   credible, the ALJ must engage in a two-step analysis:  'First, the ALJ must

15   determine whether the claimant has presented objective medical evidence of

16   an underlying impairment which could reasonably be expected to produce the

17   pain or other symptoms alleged.'"  *Ferguson v. O'Malley*, 95 F.4th 1194, 1199-

18   1200 (9th Cir. 2024) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

19   2014)).  If step one is satisfied and there is no evidence of malingering, the

20   ALJ can only reject the claimant's subjective symptom testimony "by offering

21

22       [6] The Court ordered simultaneous supplemental briefing from the parties as
to this issue.  [Dkt. No. 20 (citing AR 219).]  Plaintiff submitted the briefing; the

23   Commissioner failed to do so.  [Dkt. No. 21.]  Plaintiff argues that the ALJ erred by
not completing the DAA analysis but that "the DAA analysis is not relevant to the

24   error of the ALJ in consideration of the physical impairments and limitations as
raised by [Plaintiff] in her brief."  [*Id.* at 3-4.]  The Court does not see procedural

25   error in how the ALJ conducted the DAA analysis.  The Court agrees with Plaintiff

26   that the DAA analysis is irrelevant to consideration of the "medium work" issue and
similarly notes that the ALJ's error on that issue is irrelevant to the treatment

27   requirement after a finding that a substance use disorder is a material contributing

28   factor to a determination of disability.

18

specific, clear and convincing reasons for doing so." *Id.* (citation and internal quotation marks omitted).

At step two, an ALJ must identify which testimony is not credible and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494; *accord Ferguson*, 95 F.4th at 1200. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *see also Smartt v. Kijakazi,* 53 F.4th 489*,* 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson*, 95 F.4th at 1200 (emphasis in original).

A court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The court "may not take a general finding — an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors — and comb the administrative record to find specific conflicts." *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). ALJs must instead point to specific facts in the record to find a lack of credibility, and such findings are insufficiently specific where they are general, unspecified, and/or made in passing in a different section than the credibility determination. *Id.*

An ALJ can consider whether there is a lack of objective medical evidence supporting a claimant's allegations. However, this factor "cannot form the sole basis" for discounting subjective symptom testimony. *Burch v.*

*Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *Davis v. Berryhill*, 736 F. App'x
662, 665 (9th Cir. 2018).

When there is an error with one of the grounds the ALJ relied upon,
"the relevant inquiry in this context is . . . whether the ALJ's decision remains
legally valid, despite such error." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533
F.3d 1155, 1162 (9th Cir. 2008).  If an ALJ impermissibly relies "on one of
several reasons in support of an adverse credibility determination," the error
is harmless if "the ALJ's remaining reasoning and ultimate credibility
determination were adequately supported by substantial evidence in the
record." *Id.* at 1162 (emphasis omitted).

### 2.    Plaintiff's Subjective Symptom Testimony

The ALJ asked Plaintiff at the hearing if she had anything physically
bothering her.  [AR 243.]  Plaintiff responded:

> Besides, like, because I'm a little bit of overweight, not really.
> Besides me being overweight, everything is fine.  It's called more,
> like, my feet are kind of, like, I'm flat-footed.  So, like, you know,
> I'm overweight.  So like, you know, that gets in the way of me
> really standing so much all the time.  But other than that, it's —
> but physically, I'm okay.

[*Id.*]

Plaintiff subsequently confirmed that she is not receiving any treatment
for back or hand problems, and that she does not have knee, shoulder, or neck
problems.  [*Id.*]  She reiterated that her only physical issue is "[j]ust sort of
being overweight, and sometimes it [is] hard for you to stand because you're
overweight — or move around."  [*Id.*]

Plaintiff also points to her Function Report, in which she stated that she
can walk "about 30 minutes to an hour" before she needs to stop and rest for
"5 to 10 minutes before [she] can resume again."  [Dkt. No. 16 at 17 (citing AR
435).]

### 3.     The ALJ's Findings

In the initial DAA analysis, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms *are generally consistent* with the evidence when her substance use is included." [AR 210 (emphasis added).]

In the subsequent DAA analysis, the ALJ gave Plaintiff "*the benefit of the doubt* in concluding that she is *physically* restricted to 'medium' work (as found above)." [AR 213 (emphasis added only to the first phrase).]

### 4.     The Parties' Arguments

Plaintiff points to her subjective symptom testimony about the length of time she can stand and her prior statement as to how long she can walk before needing to take a break. [Dkt. No. 16 at 17.] Plaintiff then claims "it does not appear that the ALJ actually offered any rationale to reject the testimony of [Plaintiff] with regard to her physical impairments" and that the ALJ thus erred "because nowhere in the decision does the ALJ reject that testimony." [*Id.* at 17, 19.] Plaintiff discusses multiple Ninth Circuit cases that assess what must happen for an ALJ to properly discount subjective symptom testimony. [*Id.* at 19-22.] Plaintiff also argues that "the need to take breaks during the workday for as little as 10% of the time eliminates all work." [*Id.* at 21.]

The Commissioner argues that "Plaintiff alleged having minimal or no physical symptoms or limitations" and that "the ALJ discussed evidence that contradicted such testimony." [Dkt. No. 18 at 9, 11.] The Commissioner also argues that Plaintiff has mischaracterized her hearing testimony in her brief, and that in any case her testimony does not conflict with the demands of

1  medium work.  [*Id.* at 10-11.]

2

3  ### 5.   The ALJ Accepted Plaintiff's Subjective Symptom Testimony, which was Not Error

4    Here, the ALJ did not reject Plaintiff's subjective symptom testimony.

5  Instead, the ALJ found Plaintiff's subjective symptom testimony "generally

6  consistent," gave Plaintiff "the benefit of the doubt," and *accepted* the

7  testimony.  Thus, there is no basis for an argument that the ALJ *rejected* the

8  testimony, and the various cases Plaintiff cites to that effect are inapposite.

9  Moreover, there is no error in the ALJ accepting Plaintiff's testimony.  *See,*

10  *e.g.,* 20 C.F.R. § 416.913(a)(4) ("Evidence from nonmedical sources is any

11  information or statement(s) from a nonmedical source (including you) about

12  any issue in your claim.  We may receive evidence from nonmedical sources

13  either directly from the nonmedical source or indirectly, such as from forms

14  we receive and our administrative records.").

15    As to Plaintiff's claimed need for breaks, she has not shown that this

16  applies to her.  Her hearing testimony did not include a discussion as to the

17  length of the breaks she needed before she would have stood too long.  Also,

18  the statements on her Function Report do not necessarily imply that she

19  needs more breaks than would be normally allotted.  Finally, this argument,

20  which would be better suited in discussing an error with the ALJ's RFC

21  findings, is discordant with Plaintiff's earlier argument that the ALJ erred

22  when using Plaintiff's statements to craft the exertional limit in the RFC.

23

24

25

26

27

28

## IV.    Order

For all the reasons stated above, the Court finds that the ALJ's decision does not show legal error and is supported by substantial evidence.  It therefore is affirmed.  A separate judgment will issue.

Dated: August 27, 2025

_____
PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

23